# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRUCE STIPE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-2081** |
| **WARDEN HOWARD PRINCE** | **SECTION "J" (4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

**I.  Factual and Procedural Background**

The petitioner, Bruce Stipe ("Stipe"), is a convicted inmate incarcerated in the Elayn Hunt Correctional Center in St. Gabriel, Louisiana.[2]  On October 7, 1993, Stipe and two co-defendants, Ronald Harris and Lloyd Page,[3] were charged by bill of information in Orleans Parish with one

---

[1] Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] R. Doc. No. 1.

[3] Page's name was originally spelled "Pace" in the Bill of Information.  It was corrected at his guilty plea.

count of attempted first degree murder of Orleans Parish Criminal Sheriff's Deputy Stacy Stine and one count of aggravated escape from the Orleans Parish Criminal District Court.[4]

The record reflects that, on September 3, 1993, Section D of the Orleans Parish Criminal District Court concluded around 11:30 a.m.[5] Deputy Stine was ordered to take the prisoners to the docks at the Orleans Parish Prison. The prisoners consisted of ten or eleven males and one female. The prisoners were not handcuffed or shackled. To keep the genders separated, the female prisoner was taken to the top of the stairs near a holding cell, and the male prisoners were sent down to the bottom of the stairs to another holding area. Deputy Stine entered the stairwell near the male prisoners and locked the access door behind him. As he was about to unlock the holding cell for the male prisoners, Stipe stabbed him in the back of the head, saying "Cap, you ain't f---- going nowhere." Stipe was armed with a metal shank, described as a nail with tape wrapped around one end. Ronald Harris then grabbed Deputy Stine and held him so he could not get away. Harris also punched Deputy Stine in the lower back and ribs. Lloyd Page also beat on Deputy Stine from the front. Meanwhile, Stipe continued to stab the deputy four or five times in the back of the head, once in the neck, once in the face, and in the hands when Deputy Stine tried to cover his face. Deputy Stine eventually fell to the ground and pretended to be dead. The three prisoners took his keys, opened the door at the top of the stairway and ran out.

Gerald Leydecker, Jr. was an indigent defender on that date of the incident. He had a visitor in from out of town, and he asked Captain Claude Adams if he could show his visitor the holding cell at the back of the Section D courtroom. As Captain Adams went first into the door at the back

---

[4] St. R. Vol. 1 of 5, Bill of Information, 10/7/93.

[5] The facts were taken from the unpublished opinion of the Louisiana Fourth Circuit Court of Appeal. *State v. Stipe*, 738 So.2d 210 (La. App. 4th Cir. 2006) (Table); St. R. Vol. 1 of 5, 4th Cir. Opinion, 98-KA-0371, pp. 2-4, 5/19/99.

of the courtroom, he saw Stipe standing there. He screamed at Stipe to get up against the wall. Stipe then ran towards Captain Adams with the shank. Harris came out from behind the door, and the two prisoners ran through the door into the courtroom.

Leydecker heard the screaming and realized someone was trying to escape. He tried to close the door, but Harris forced it open. Leydecker started to wrestle with Harris and managed to get him in a headlock to subdue him. Leydecker, however, was then hit from behind and hit in the eye and nose. He bled profusely. When he was hit from behind, Leydecker released the headlock he had on Harris, and Harris ran out of the courtroom and out of the building.

Assistant District Attorney Keith Detweiler saw Harris run out of the courtroom, but he was unable to stop him. Detweiler managed to stop Stipe, who still held onto the metal shank. They struggled on the floor in the back of the courtroom, and another assistant district attorney, Robert Hildum, helped Detweiler hold Stipe down. Meanwhile, Captain Adams retrieved his service revolver and held it on Stipe so that Detweiler and Hildum could get off of him. Stipe reluctantly released the shank only after Adams threatened to shoot him.

Another indigent defender, David Varisco, observed Harris bolt out of the courtroom and down the hall. When he went into the courtroom, he saw Leydecker's swollen eyes and bleeding face, the gash in Detweiler's face, and Stipe being held at gunpoint with the shank still in his hand. Varisco realized that the person who had just run out of the courtroom also must be an escaping prisoner. Varisco then ran after Harris, who was apprehended five blocks from the courthouse.

On January 16, 1996, Page entered pleas of guilty to count one, attempted first degree murder, and to an amended count two, attempted simple escape.[6] He was sentenced to serve two years on count one and one year on amended count two.[7]

Stipe and Harris were jointly tried before a jury on February 6 and 7, 1996.[8] The jury found Harris guilty of aggravated battery, a lesser included offense on count one, and guilty as charged of aggravated escape on count two.[9] Stipe was found guilty of attempted second degree murder, a lesser included offense on count one, and guilty as charged of aggravated escape on count two.[10]

On February 16, 1996, the Trial Court sentenced Harris to serve 10 years in prison on count one and to serve a consecutive ten year sentence on count two.[11] After a hearing on the multiple bill filed by the State, the Trial Court also sentenced Stipe as a third felony offender to serve 33⅓ years at hard labor on count one and to serve a consecutive seven years at hard labor on count two.[12]

On direct appeal, Stipe's counsel raised three assignments of error:[13] (1) the Trial Court erred in denying the motion to quash the bill of information on grounds of double jeopardy; (2) the Trial Court erred in sentencing him on two felonies arising from a continuing incident, which amounted

---

[6] St. R. Vol. 1 of 5, Waiver of Constitutional Rights Plea of Guilty, 1/16/96; St. R. Vol. 3 of 5, Plea Minutes (Page), 1/16/96.

[7] St. R. Vol. 3 of 5, Plea Minutes (Page), 1/16/96.

[8] St. R. Vol. 3 of 5, Trial Minutes, 2/6/96; Trial Minutes (3 pages), 2/7/96.

[9] St. R. Vol. 1 of 3, Trial Minutes (3 pages), 2/7/96; St. R. Vol. 1 of 5, Jury Verdict Form, 2/7/96.

[10] *Id.*

[11] St. R. Vol. 3 of 5, Sentencing Minutes (Harris), 2/16/96.

[12] St. R. Vol. 3 of 5, Multiple Bill Hearing Minutes, 2/16/96.

[13] St. R. Vol. 1 of 5, 4th Cir. Opinion, 98-KA-0371, 5/19/99. Harris's appeal was filed jointly and the same arguments were raised on his behalf.

to a violation of double jeopardy; and (3) the Trial Court erred in denying the motion to recuse the district attorney's office. On May 19, 1999, the Louisiana Fourth Circuit affirmed Stipe's convictions and sentences finding no merit to the first two claims and finding the third claim meritless and repetitive of matters resolved in pretrial writ applications in which the claim was found to be meritless.

On February 4, 2000, the Louisiana Supreme Court denied without stated reasons Stipe's timely[14] submitted writ application seeking review of the appeal.[15] His convictions and sentences became final 90 days later, on May 4, 2000, when he did not file a writ of certiorari with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

## II. State Post-Conviction Proceedings

Almost 16 months later, on August 27, 2001, Stipe *pro se* submitted an application for post-conviction relief in the Trial Court in which he alleged that his conviction and sentence violated double jeopardy.[16] The Trial Court denied relief on September 3, 2003, finding the petition to have been untimely filed under La. Code Crim. P. art. 930.8.[17] Stipe moved for reconsideration, and on

---

[14]Pursuant to La. S. Ct. R. X§5, Stipe had 30 days from the issuance of the state appellate court's opinion to mail or file a timely writ application in the Louisiana Supreme Court.

[15]*State v. Stipe*, 754 So.2d 220 (La. 2000); St. R. Vol. 4 of 5, La. S. Ct. Order, 1999-KO-2319, 2/4/00; La. S. Ct. Writ Application, 99-KO-2319, 7/30/99 (dated 6/14/99).

[16]St. R. Vol. 1 of 5, Uniform Application for Post-Conviction Relief, dated 8/27/01.

[17]St. R. Vol. 1 of 5, Trial Court Judgment, 9/3/03.

October 3, 2003, the Trial Court denied the claims in the application as meritless.[18] Stipe did not seek review of this order.

More than four years later, on November 12, 2007, Stipe submitted a writ application to the Louisiana Fourth Circuit asking the Court to review the Trial Court's ruling on his application for post-conviction relief.[19] The Court obtained a copy of his prior application and on January 8, 2007, denied relief as barred from post-conviction review under *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996). Stipe did not seek further review of this order.

On January 17, 2008, Stipe alleges to have submitted a motion to correct his illegal sentence to the Trial Court.[20] On May 8, 2008, Stipe filed an application for writ of mandamus with the Louisiana Fourth Circuit claiming that he had not received a ruling on the motion to correct.[21] Although the record contained no proof that the motion was filed, the Louisiana Fourth Circuit denied the application as repetitive under La. Code Crim. P. art. 930.4, because the arguments raised in his motion were repetitive of those raised in his prior writ application, which were barred under *State ex rel. Melinie*.[22]

Stipe sought review in the Louisiana Supreme Court, and on June 16, 2008, the Court transferred his writ application to the Trial Court for a ruling on the motion to correct allegedly filed

---

[18] St. R. Vol. 1 of 5, Trial Court Judgment, 10/3/03; Motion for Rehearing, 9/26/03 (dated 9/24/03).

[19] St. R. Vol. 5 of 5, 4th Cir. Writ Application, 2007-K-1532, 11/27/07 (dated 11/12/07).

[20] St. R. Vol. 1 of 5, Motion for Correction of Illegally Imposed Sentence, undated. The filing date is alleged by Stipe to have been January 17, 2008 in his later filed writ application to the Louisiana Fourth Circuit. The State does not dispute this date.

[21] St. R. Vol. 5 of 5, 4th Cir. Writ Application, 2008-K-0580, 5/8/08.

[22] St. R. Vol. 5 of 5, 4th Cir. Order, 2008-K-0580, 5/21/08.

on January 17, 2008.[23] After numerous motions to enforce by Stipe and letters to the Trial Court from the Louisiana Supreme Court's central staff,[24] on August 19, 2009, the Trial Court denied the motion to correct finding that the sentences imposed were not illegal.[25]

Eight months later, on April 27, 2010, Stipe filed a writ application in the Louisiana Fourth Circuit seeking review of the Trial Court's August 19, 2009, order.[26] The Court denied relief on May 19, 2010, as repetitive of his prior writ application which was denied pursuant to *State ex rel. Melinie*.[27] The Louisiana Supreme Court eventually denied Stipe's subsequent writ application on June 17, 2011, pursuant La. Code Crim. P. art. 930.3 and *State ex rel. Melinie*.[28]

In the meantime, Stipe filed a writ application with the Louisiana Fourth Circuit on May 25, 2010, again seeking review of the denial of his 2008 motion to correct.[29] The Court denied the application on June 16, 2010, finding no error in the Trial Court's ruling.[30] He did not seek further review.

---

[23]*State ex rel. Stipe v. State*, 989 So.2d 82 (La. 2008); St. R. Vol. 5 of 5, La. S. Ct. Order, 2008-KH-1297, 6/27/08; La. S. Ct. Writ Application, 08-KH-1297, 6/16/08 (postal meter 6/2/08).

[24]*See e.g.*, St. R. Vol. 5 of 5, Motion to Enforce, 08-KH-1297, 10/17/08 (dated 8/13/08); Motion for Petition, 08-KH-1297, 11/14/08; Motion to Reply, 08-KH-1297, 7/4/09; Motion to Enforce, 08-KH-1297, 10/6/09; *State ex rel. Stipe v. State*, 31 So.3d 1057 (La. 2010); La. S. Ct. Order, 2008-KH-1297, 4/16/10 (denying the last motion to enforce as moot); St. R. Vol. 1 of 5, Central Staff Letter, 10/20/08; Central Staff Letter, 4/3/09; Central Staff Letter, 7/29/09.

[25]St. R. Vol. 1 of 5, Trial Court Judgment, 8/19/09.

[26]St. R. Vol. 5 of 5, 4th Cir. Writ Application, 2010-K-0610, 4/27/10.

[27]St. R. Vol. 5 of 5, 4th Cir. Order, 2010-K-0610, 5/19/10.

[28]*State ex rel. Stipe v. State*, 63 So.3d 1029 (La. 2011); St. R. Vol. 5 of 5, La. S. Ct. Order, 2010-KH-1275, 6/17/11; La. S. Ct. Writ Application, 10-KH-1275, 6/4/10 (postal meter 5/26/10).

[29]St. R. Vol. 5 of 5, 4th Cir. Writ Application, 2010-K-0755, 5/25/10.

[30]St. R. Vol. 5 of 5, 4th Cir. Order, 2010-K-0755, 6/16/10.

He filed another application for writ of mandamus in the Louisiana Fourth Circuit on July 30, 2010.[31] The Court denied the application on September 2, 2010, because Stipe did not attach anything for the Court to review.[32]

He thereafter submitted a writ application with the Louisiana Supreme Court on September 9, 2010, seeking review of his same 2008 motion to correct.[33] The Court transferred the application to the Trial Court on October 8, 2010, with instructions to act on his motion and provide the Court with a copy of the judgment.[34]

On December 16, 2010, the Trial Court sent a Proof of Compliance letter to the Louisiana Supreme Court's central staff advising the Court that the motion was ruled on August 19, 2009.[35] The Louisiana Supreme Court thereafter denied Stipe's application on March 25, 2011.[36]

In the meantime, on November 24, 2010, Stipe filed an application for writ of mandamus in the Louisiana Fourth Circuit seeking to compel a ruling by the Trial Court on his motion to correct his sentence.[37] The Court denied on January 7, 2011, because Stipe had not filed a motion in the Trial Court.[38]

---

[31]St. R. Vol. 5 of 5, 4th Cir. Writ Application, 2010-K-1098, 7/30/10.

[32]St. R. Vol. 5 of 5, 4th Cir. Order, 2010-K-1098, 9/2/10.

[33]St. R. Vol. 5 of 5, La. S. Ct. Writ Application, 10-KH-2239, 10/4/10 (postal meter 9/9/10).

[34]*State ex rel. Stipe v. State*, 46 So.3d 1255 (La. 2010); St. R. Vol. 5 of 5, La. S. Ct. Order, 2010-KH-2239, 10/8/10.

[35]St. R. Vol. 5 of 5, Proof of Compliance, 12/16/10.

[36]*State ex rel. Stipe v. State*, 61 So.3d 652 (La. 2011); St. R. Vol. 1 of 5, La. S. Ct. Order, 2010-KH-2239, 3/25/11.

[37]St. R. Vol. 5 of 5, 4th Cir. Writ Application, 2010-K-1643, 11/24/10.

[38]St. R. Vol. 5 of 5, 4th Cir. Order, 2010-K-1643, 1/7/11.

Stipe filed another writ application with the Louisiana Fourth Circuit on July 25, 2011 related to the rulings on his prior writ applications.[39] The Court denied the application on August 2, 2011, stating that it was without jurisdiction to review the rulings of the Louisiana Supreme Court.[40]

### III. Federal Petition

On August 25, 2011, the clerk of this Court filed Stipe's petition for federal habeas corpus relief in which he raised the following grounds for relief:[41] (1) his conviction was obtained in violation of double jeopardy, because the sentence was based on a prior conviction for attempted felon in possession of a weapon; (2) his conviction was obtained in violation of double jeopardy where the sentences on the two counts were both punishment for the same incident; and (3) the attempted felon in possession charge used in the multiple bill was illegal, because the statute on which it was based is invalid, and *State ex rel. Melinie* would not bar a claim based on that argument.

In its response, the State argues that the petition was untimely filed and should be dismissed as time barred.[42]

---

[39]St. R. Vol. 5 of 5, 4th Cir. Writ Application, 2011-K-1016, 7/25/11.

[40]St. R. Vol. 5 of 5, 4th Cir. Order, 2011-K-1016, 8/2/11.

[41]R. Doc. No. 1.

[42]R. Doc. No. 13.

9

## IV. General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[43] applies to this petition, which is deemed filed in this court under the federal mailbox rule on August 18, 2011.[44] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State asserts that Stipe did not timely file his federal petition. For the reasons below, the Court finds that Stipe's federal petition was not timely filed under the AEDPA.

---

[43]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[44]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Stipe's federal habeas petition on August 25, 2011, when pauper status was granted. Stipe dated his signature on the petition on August 18, 2011. This is presumed to be the earliest date on which he could have been submitted the pleadings to prison officials for mailing.

## V. Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[45] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). As discussed above, Stipe's conviction was final on May 4, 2000. Under the plain language of § 2244, Stipe had one year, or until May 4, 2001, to file a timely federal application for habeas corpus relief and he failed to do so. Thus, literal application of the statute would bar Stipe's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2) (2006). In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th

---

[45]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
A.     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B.     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C.     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
D.     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d) (2006).

Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006). The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds*, *Carey*, 536 U.S. at 122 (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

Furthermore, requests for documents and transcript copies like those filed by Stipe in the state courts are not other collateral review for purposes of the tolling calculation. *Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523, at *2 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion

for transcript copies is not "other collateral review" for tolling purposes); *Brown v. Cain*, 112 F. Supp.2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, No. 01-3080, 2002 WL 63541, at *2 (E.D. La. Jan. 16, 2002) (Vance, J.); *Jones v. Johnson*, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling); *cf. Gonzales v. Wilkinson*, 269 Fed. Appx. 481, 484-86 (5th Cir. Mar. 12, 2008) (delay in receiving transcript copies does not warrant statutory or equitable tolling where motion based on the transcript was not timely or properly filed under state law).

In the instant case, the AEDPA filing period began to run on May 5, 2000, the day after Stipe's conviction became final. The filing period ran for 365 days, until May 4, 2001, when it expired. Stipe had no properly filed state post-conviction or other collateral review pending during that time period. Another 114 days would pass after the end of the AEDPA filing before he submitted his application for post-conviction relief to the state trial court for filing on August 27, 2001. That pleading, filed in the state courts after expiration of the AEDPA filing period, does not provide any tolling benefit. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some

extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin*, 310 F.3d at 848. Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner. *See Holland v. Florida*, __ U.S. __, 130 S.Ct. 2549, 2574-75 (2010) (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman*, 184 F.3d at 402 ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (state's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In this case, Stipe has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling. His lack of diligence in pursuing timely relief is further demonstrated by the more than four year break in his state court filings between the

resolution of his application for post-conviction relief on October 3, 2003, and his next state court filing on November 12, 2007. There is nothing in this record to warrant equitable tolling.

Stipe's federal petition is deemed filed on August 18, 2011, which is more than 10 years after the AEDPA filing period expired on May 4, 2001. Therefore, Stipe's federal petition was untimely filed and must be dismissed for that reason.

## VI. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Bruce Stipe's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE** as time barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[46]

New Orleans, Louisiana, this 29th day of December, 2011.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[46]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.